IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------- x
In re:                                          :          Chapter 11

FERRELLGAS PARTNERS, L.P. AND     :          Case No.: 21-10021(MFW)
FERRELLGAS PARTNERS FINANCE CORP.,[1] :          (Jointly Administered)

              Debtors.               :          **Related Docket Nos. 5 and 43**
---------------------------------------- x

**FINAL ORDER AUTHORIZING (I) CONTINUED USE OF
EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF
EXISTING BANK ACCOUNTS, (II) CONTINUATION OF EXISTING DEPOSIT
PRACTICES, AND (III) CONTINUATION OF INTERCOMPANY TRANSACTIONS**

Upon the Motion[2] of the above-captioned Debtors for entry of an Interim Order and Final Order (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of existing bank accounts; (ii) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtors' practices under their existing Cash Management System or other actions described in the Motion or this Final Order; (iii) authorizing, but not directing, the Debtors to continue to maintain and use their existing deposit practices notwithstanding the provisions of section 345(b) of the Bankruptcy Code; and (iv) authorizing, but not directing, the Debtors to continue certain ordinary course intercompany transactions; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Ferrellgas Partners, L.P. (8480), and Ferrellgas Partners Finance Corp. (2520). The corporate headquarters and the mailing address for the Debtors is 7500 College Boulevard, Suite 1000, Overland Park, KS 66210.

[2] Capitalized terms used not otherwise defined herein shall have the meanings ascribed to them in the Motion.

raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the First Day Declaration; and the Court having granted interim relief on the Motion on January 12, 2021 (D.I. 43); and the Court having held, if necessary, a final hearing on the Motion (the "Hearing"); and the Court having found that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on a final basis, as set forth herein.

2. Any objections or responses to entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3. The Debtors are authorized, but not directed, to maintain and continue to use their existing Cash Management System under the terms and conditions provided for by the existing agreements with the Bank, except as modified by this Final Order. In connection with the ongoing utilization of the Cash Management System, the Debtors shall maintain detailed records with

respect to all transfers of funds, including intercompany transfers, so that all transactions may be readily ascertained, traced, and recorded properly.

4.     All existing deposit agreements between the Debtors and the Bank (the "Deposit Agreements") shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court or as set forth herein.

5.     The Debtors are authorized, but not directed, to (a) continue to use the Debtor Bank Account, including, but not limited to, the Debtor Bank Accounts identified in the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (b) maintain deposits in and withdraw funds from the Debtor Bank Accounts in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, centralized lockbox or other items presented, issued, or drawn on the Debtor Bank Accounts; (c) pay the Bank Charges (defined below) in connection with the Debtor Bank Accounts, including any Bank Charges arising prior to the Petition Date; (d) perform their obligations under the documents and agreements governing the Debtor Bank Accounts; and (e) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession.[3]

6.     Subject to the terms of this Final Order and the protections provided in Paragraph 7 herein, the Bank and all other applicable financial institutions are authorized, but not directed, to (a) continue to administer, service, and maintain the Debtor Bank Accounts as such accounts

---

[3] The Debtors do not have or print checks or business forms, but to the extent the Debtors order checks or business forms, such checks and business forms will contain the designation "Debtor in Possession" and the corresponding bankruptcy case number.

were administered, serviced, and maintained prepetition, without interruption and in the ordinary course; (b) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, any claim that the Court has granted the Debtors approval to pay, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date in accordance with the terms of the applicable Deposit Agreements; *provided that* the applicable Debtor Bank Accounts contain sufficient funds; and (c) when requested by the Debtors in their sole discretion, receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, any claim against the Debtors arising after the Petition Date in accordance with the terms of the applicable Deposit Agreements and provided that the applicable Debtor Bank Accounts contain sufficient funds.

7. Notwithstanding any other provision of this Final Order, the Bank and applicable financial institutions shall not be liable to any party or otherwise deemed in violation of this Final Order on account of: (a) following the Debtors' representations, instructions, presentations, or directions as to any order of the Court, (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires, ACH Transfer, or other item in a good faith belief or representation by the Debtors that the Court has authorized such prepetition check, draft, wire, ACH Transfer or other item; or (c) as the result of an innocent mistake made despite implementation of reasonable handling procedures.

8. The Bank is authorized to deduct from the appropriate Debtor Bank Accounts the Bank Fees and Expenses owed to it as set forth in the Deposit Agreements and further, to charge back to the appropriate accounts of the Debtors the following charges (the "Return Charges" and together with the Bank Fees and Expenses, the "Bank Charges") any amounts resulting from

returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions ("ACH Transfers"), wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

9. No liens on any Debtor Bank Accounts granted to any of the Debtors' creditors shall take priority over the prepetition and postpetition Bank Charges except as set forth in the Deposit Agreements.

10. Within five business (5) days of entry of this Final Order, the Debtors shall (a) contact each bank, (b) provide the Bank with each of the Debtors' employer identification numbers, and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

11. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

12. The Bank provided with notice of this Final Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on such Debtor Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

13. The Debtors are authorized to implement such reasonable changes, consistent with this Final Order, to the Cash Management System as the Debtors may deem necessary or appropriate in the ordinary course, including, without limitation, closing any of the Debtor Bank Accounts and opening any additional bank accounts following the Petition Date (each a "New

Account" and, collectively, the "New Accounts") wherever the Debtors deem that such accounts are needed or appropriate. Notwithstanding the foregoing, any New Accounts that the Debtors open shall be (a) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or at such banks that are willing to immediately execute a Uniform Depository Agreement, (b) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, and (c) designated a "Debtor in Possession" account by the relevant bank.  The New Accounts are deemed to be Debtor Bank Accounts and the banks at which the New Accounts are opened are deemed to be Bank(s), and both are subject to the rights, obligations, and relief granted in this Final Order.  The Debtors shall provide the U.S. Trustee and the Bank with notice within fifteen (15) days of any Debtor Bank Accounts that they close or New Accounts that they open.  The Bank is authorized to honor the Debtors' requests to (i) open or close (as the case may be) any such Debtor Bank Accounts or New Accounts and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Bank shall not have any liability to any party for relying upon such instructions. In the event that the Debtors open or close any Debtor Bank Accounts or New Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee.

14. The Debtors are authorized to maintain their deposits in accordance with existing practices under the Cash Management System as in effect as of the Petition Date, subject to any reasonable changes, consistent with this Final Order, to the Cash Management System that the Debtors may implement in the ordinary course, and, to the extent such practices are inconsistent with the requirements of Bankruptcy Code Section 345(b), such requirements are waived.

15. The requirement of the UST Guidelines to establish separate accounts for cash collateral and/or tax payments is hereby waived except as otherwise required by any applicable agreements between the Debtors and the Bank.

16. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

17. Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the individual disbursements of each Debtor, regardless of which Debtor is responsible for payment of such fees. Nothing in this Final Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

18. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

19. Nothing in this Final Order nor the Debtors' payment of claims pursuant to this Final Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims or defenses of the Debtors' rights to dispute any claim on any

grounds, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Final Order.

20. The requirements of Bankruptcy Rules 6003 and 6004(a) are satisfied by the contents of the Motion.

21. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Final Order is hereby waived, and the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

22. The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Final Order. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Final Order.

23. The Debtors are authorized, but not directed, in their sole discretion to pay the prepetition and postpetition Consenting Noteholders Fees and Expenses (as defined in the Transaction Support Agreement executed on December 10, 2020, among the Debtors, non-debtor affiliates and the Consenting Noteholders) according to the terms set forth therein, as payments in the ordinary course of business and without further need for Bankruptcy Court approval.

Dated: February 3rd, 2021
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE